NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY RUTLEDGE,<br><br>    Plaintiff,<br><br>v.<br><br>INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, NEW YORK SHIPPING ASSOCIATION, INC., LOCAL 1233, MAHER TERMINALS, LLC, BERNARD DUDLEY and GERARD CROTTY, JOHN DOES 1-10, ABC CORPS, 1-10,<br><br>    Defendants. | Civil Action No.: 2:14-cv-05589-(CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

## I.   INTRODUCTION

This matter comes before the Court upon the motion [ECF No. 31] of Defendants International Longshoremen's Association, AFL-CIO ("ILA"), New York Shipping Association, Inc. ("NYSA"), Local 1233, Maher Terminals, LLC ("Maher"), Bernard Dudley, and Gerard Crotty (collectively, the "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint [ECF No. 29] of Plaintiff Jeffrey Rutledge. The Court decides this motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Defendants' motion is granted in part and denied in part.

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

## II. BACKGROUND

Plaintiff began working as a longshoreman in 2003, in the Port of New York and New Jersey. See Amended Complaint (the "Complaint"), ECF No. 29, ¶ 2. He was a union member of Local 1233, sponsored by his employer, Maher. Id. Plaintiff's employment as a longshoreman required the approval of and registration with the New York Waterfront Commission (the "Waterfront Commission"), a bi-state agency of New York and New Jersey. See id. ¶¶ 18, 19. The Waterfront Commission, in turn, required that both Plaintiff's union—Defendant Local 1233—and Defendant NYSA sponsor Plaintiff's application. See id.

In October 2006, Plaintiff was arrested in South Plainfield, New Jersey and charged with possession of cocaine. Id. ¶ 4. The charge was downgraded to a disorderly person's offense and Plaintiff was admitted into a conditional discharge program, without entering a guilty plea. Id. ¶ 5. After Plaintiff completed the program, the charge against him was dismissed. Id.

Following Plaintiff's arrest, however, Maher and Local 1233 terminated Plaintiff from their sponsorships.[2] Id. ¶ 6. In March 2008, the Waterfront Commission revoked Plaintiff's longshoreman's registration. Id. ¶ 5. After his termination, Plaintiff entered into a drug and alcohol rehabilitation program, which he completed. Id. ¶ 7. Also around that time, "in or around 2008 and 2009," Plaintiff was treated for cancer and suffered from hearing loss as a result of his treatment. Id. ¶ 24. It is unclear from the Complaint whether Plaintiff's cancer diagnosis and treatment preceded the revocation of his sponsorship.

In March 2010, two years after the revocation of his longshoreman's registration, Plaintiff sought reinstatement with the Waterfront Commission, in accordance with the Collective Bargaining Agreement (the "CBA"), to which the NYSA, ILA, Maher, and Local 1233 are parties.

---

[2] The Complaint does not specify the date of Plaintiff's termination from sponsorship.

2

See id. ¶ 11; see also Affidavit of Barbara North ("North Aff."), ECF No. 14-2, ¶ 5. The NYSA-ILA Seniority Board (the "Board"), an arbitral panel, heard Plaintiff's request in April 2010 and denied in May 2010 based upon "the current depressed economic environment and your arrest for possession of a controlled dangerous substance[.]" See Complaint ¶ 12. Plaintiff, through his attorney, appealed the denial in August 2010 to the NYSA-ILA Contract Board ("Contract Board"), notifying the Board that Plaintiff had completed an outpatient drug-treatment program and that his recent bout with cancer had changed his outlook on life. See North Aff. ¶ 7. Plaintiff's attorney also sent a second letter questioning the denial of Plaintiff's application based upon Plaintiff's understanding that several employees, who had been charged with more serious offenses, were allowed to return to work as longshoremen. See Complaint ¶ 13. In December 2010, the Contract Board upheld the Seniority Board's decision denying Plaintiff's request for reinstatement based upon his arrest for possession of a controlled dangerous substance. See North Aff. ¶ 12. In April 2013, Plaintiff submitted a second request for reinstatement to the Seniority Board, which was denied in July 2013, based upon the December 2010 decision of the Contract Board. See Complaint ¶ 18; North Aff. ¶¶ 14, 15.

Plaintiff filed suit in New Jersey State Court in August 2014 [ECF No. 1-1]. Defendants removed the action to this Court in September 2014 [ECF No. 1], and Plaintiff filed an Amended Complaint in February 2015.

### III. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all

3

well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated ... Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## IV. DISCUSSION

Defendants have moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that 1) Plaintiff's claims are untimely and Defendants' statute of limitations defenses are apparent from the face of the Complaint and 2) Plaintiff's state-law-based claims are preempted by federal law and the Complaint otherwise fails to state a claim upon which relief may be granted. While Plaintiff's federal-law-based claims are time-barred, his state-law-based claims are not preempted by federal law. For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.

### A.     Plaintiff's Federal Law Claims

Plaintiff alleges Breach of a Collective Bargaining Agreement (Count Four) against his former employer—Maher—the NYSA, and others. He also alleges Breach of the Duty of Fair Representation (Count Five)[3] in his Complaint against his former union and other unnamed defendants. Defendants assert that these two claims, as well as Plaintiff's state-law-based claims, constitute a single "hybrid" suit under Section 301 of the Labor Management Relations Act ("LMRA"). See Defendants' Memorandum of Law in Support ("Defendants' MOL"), ECF No. 31-1, at 10-11. Section 301 of the LMRA provides the basis for an employee to sue his employer for a violation of the collective bargaining agreement. A "hybrid" suit is brought when the employee sues both the employer and the union: the former for damages caused by the alleged wrongful discharge and the latter for a breach of its duty of fair representation in pursuing the grievance based on that wrongful termination. See generally United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 66 (1981). Where a complaint includes both a claim against the plaintiff's employer and against the union, as here, courts apply a six-month statute of limitations, pursuant to Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983); Albright v. Virtue, 273 F.3d 564, 572-73 (3d Cir. 2001). The statute of limitations for a hybrid suit begins to run when "'the futility of further union appeals became apparent or should have become apparent.'" Albright v. Virtue, 273 F.3d 564 at 566 (citing Scott v. Local 863, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am., 725 F.2d 226, 229 (3d Cir. 1984)).

Here, Plaintiff concedes that the facts alleged in the Complaint "may give rise to a hybrid cause of action, if discovery [so] reveals . . . ." See Plaintiff's Memorandum of Law in Opposition

---

[3] This claim appears to have been mistakenly listed also as "Count Four" in the Complaint.

("Plaintiff's MOL in Opp."), ECF No. 36, at 4. In order for Plaintiff's claims to not constitute a "hybrid" suit, Plaintiff's employer must have repudiated the contract's grievance procedures, either through "'an express refusal to abide by contractually established grievance and arbitration machinery . . . or conduct which renders the employer unable or apparently unable to comply.'" Carrington v. RCA Global Commc'ns, Inc., 762 F. Supp. 632, 638 (D.N.J. 1991) (internal citations omitted). Plaintiff's Complaint does not allege that Defendants expressly refused to abide by the grievance procedures. Nor does Plaintiff allege that Defendants took action rendering themselves incapable of complying. Rather, Plaintiffs Complaint demonstrates that the employers followed the grievance process and twice denied his application for reinstatement.[4] Thus, as a "hybrid" suit, the cause of action would have accrued, at the latest, in July 2013—when the Seniority Board denied Plaintiff's second request for reinstatement.

Plaintiff argues, in the alternative, that his claims are not time-barred because Defendants have not shown that the applicable grievance procedures were exhausted. See Plaintiff's MOL at 13-14. But, "the futility of further union appeals . . . should have become apparent" to Plaintiff by July 2013, following the second denial of his request for reinstatement, more than five years since the revocation of his longshoreman registration. Albright v. Virtue, 273 F.3d 564 at 566.

Plaintiff filed suit in August 2014, more than one year after the second denial, and a year after he knew or should have known that further union appeals would be futile. Accordingly, Counts Four and Five of Plaintiff's Complaint should be dismissed as untimely.[5]

---

[4] Plaintiff also alleges that Defendants failed to inform him of his "right to voluntarily participate in an approved drug rehabilitation program prior to his termination[,]" Complaint ¶ 2, which is covered by the CBA's Article XIX and Annex F. See ECF No. 31-6. Plaintiff's allegation regarding the drug rehabilitation program does not affect this statute of limitations analysis.

[5] Similarly, even if Plaintiff's claims do not constitute a "hybrid" suit, his Complaint was nonetheless filed after the statute of limitations had passed for both Counts Four and Five. An action against a union for breach of its duty of fair representation "must be brought within six

6

**B.     Plaintiff's State Law Discrimination Claim**

Having determined that Counts Four and Five of Plaintiff's Complaint should be dismissed, this Court now turns to Plaintiff's state law discrimination claim.

Defendants appear to argue that Count One of the Complaint—for unlawful discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD")—is preempted by the LMRA. See Defendants' MOL at 9. "A state-law cause of action is pre-empted under § 301 [of the LMRA] if its resolution is 'substantially dependent on analysis of a collective-bargaining agreement.'" Schacht v. Caterpillar, Inc., 503 U.S. 926, 926 (1992) (internal citation omitted). Plaintiff alleges, inter alia, that Defendants terminated him, refused to hire him, and barred him from employment because of his disability—his cancer and use of a cochlear implant following cancer treatment. See Complaint, Count One, ¶ 2. This state law claim is independent of the CBA, because it involves "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988). Moreover, in defending against the claims, the Defendants would have to show a non-retaliatory reason for the discharge, which, again, is independent of the CBA. Id. Because neither the claim nor the defenses require the Court to interpret any of the terms of the CBA, Plaintiff's NJLAD claim is not preempted by the LMRA.

---

months from the date of the arbitration decision." Johnson v. United Food & Commercial Workers, Int'l Union Local No. 23, 828 F.2d 961, 967 (3d Cir. 1987). Although suits against only the employer for breach of a collective bargaining agreement are rare, the six-month statute of limitations for that cause of action is "tolled until it was or should have been clear to the employee that the union would not pursue the grievance." Vadino v. A. Valey Engineers, 903 F.2d 253, 261 (3d Cir. 1990). Such tolling is "consistent with the congressional goal of resolving labor disputes in the first instance through the collectively bargained grievance procedure, because the employee will be encouraged to persist in efforts to have the union act on his or her behalf." Id. Accordingly, under either scenario, Plaintiff's claims are time-barred.

7

### C.  Plaintiff's Tort Claims

Last, Plaintiff also alleges claims for Fraud, Deceit, and Misrepresentation (Count Two) and Tortious Interference with a Prospective Economic Advantage (Count Three). Defendants appear to argue that these claims involve examination of the CBA and Plaintiff has failed to state claims upon which relief may be granted. To establish a prima facie case for fraud under New Jersey law, Plaintiff must show that: 1) Defendants made a material misrepresentation of a presently existing or past fact, (2) which they knew or believed to be false, (3) upon which they intended Plaintiff to rely, (4) and upon which Plaintiff reasonably did rely, (5) with resulting damages. See Atl. City Associates LLC v. Carter & Burgess Consultants, Inc., No. CIVA 05-3227 NLH, 2007 WL 2892680, at *2 (D.N.J. Sept. 28, 2007). None of these elements requires consideration of the CBA. Similarly, the elements of a claim for tortious interference with a prospective economic advantage, under New Jersey law, include: 1) a protected interest; (2) Defendants' intentional interference without justification (i.e. malice); 3) a reasonable likelihood that the interference caused the loss of the prospective gain; and 4) resulting damages. See New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc., No. 12-5610 (FLW)(LHG), 2015 WL 5822930, at *8 (D.N.J. Oct. 1, 2015). Again, none of these elements requires consideration of the CBA. Accordingly, Plaintiff's state-law-based tort claims are not preempted by federal law.

### D.  Remand To State Court

This action will be remanded to state court.[6]  Having concluded that the Complaint's

---

[6]  The parties disagree over whether Plaintiff's NJLAD claim is barred by the two-year statute of limitations. See Henry v. New Jersey Dep't of Human Servs., 204 N.J. 320, 332-33, 9 A.3d 882, 889-90 (N.J. 2010). Plaintiff argues that his cause of action was tolled until April 2013, when he had a conversation with Defendant Crotty who allegedly mentioned Plaintiff's cancer and that Plaintiff had been paid throughout the time of his recovery. According to Plaintiff, it was not until this conversation that he discovered "any real reason to believe that it was his recent disability"

8

Counts Four and Five—treated as a "hybrid" suit under the LMRA—should be dismissed as untimely, the only remaining claims in this action are the NJLAD and tort-based claims. As explained above, these claims do not require this Court's examination of the CBA and are not preempted by any controlling federal law. Under the Supreme Court's decision in Carnegie–Mellon University v. Cohill, 484 U.S. 343 (1988), when all federal claims have been eliminated and only state law claims remain, a federal district court has discretion to remand a properly removed case to state court. See also 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). In considering whether to remand, the district court should determine what "best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." Carnegie–Mellon University, 484 U.S. at 357. Considering that "the single federal-law claim in [this] action [has been] eliminated at an early stage of the litigation," this Court has "a powerful reason to choose not to continue to exercise jurisdiction." Id. at 351.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Count Four (Breach of a

---

that prevented his reinstatement. See Plaintiff's MOL at 2. Defendants posit that Plaintiff's argument for equitable tolling is undermined by the fact that his attorney sent a letter to the Contract Board in 2010—three years prior to the alleged conversation with Defendant Crotty—in which Plaintiff's attorney wrote that "'the reasons offered to justify the Seniority Board's refusal to reinstate Mr. Rutledge to his previous position are pretextual and that Mr. Rutledge is being discriminated against due to his handicap.'" See Defendants' MOL at 13. That letter, however, does not define Plaintiff's handicap or make reference to Plaintiff's cancer. See Exhibit I to Defendants' MOL, ECF No. 31-14. Moreover, as mentioned previously, it is unclear from the Complaint whether Plaintiff's cancer diagnosis and treatment preceded the revocation of his sponsorship, to what extent Defendants were aware of Plaintiff's illness, and whether Defendants took any actions that may have misled Plaintiff about the reason behind their decision not to reinstatement him. Because this Court is remanding the remaining causes of action to state court, it need not decide the statute of limitations question at this time except to the extent that the Court notes that resolution of this question could be aided by further briefing and/or development of the record.

Collective Bargaining Agreement) and Count Five (Breach of the Duty of Fair Representation) of Plaintiff's Complaint is granted, and Defendants' motion to dismiss the remainder of Plaintiff's Complaint is denied. Because all federal claims have been eliminated from this case, the remaining action is remanded to state court. An appropriate order follows.

Dated: January 14, 2016

_____
**CLAIRE C. CECCHI, U.S.D.J.**